2015 IL App (1st) 133520
No. 1-13-3520

SECOND DIVISION
December 29, 2015

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____


| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 12 CR 19620 |
| | ) | |
| VISAI NETISINGHA, | ) | |
| | ) | Honorable Noreen Valeria Love |
| Defendant-Appellant. | ) | Judge Presiding. |


JUSTICE SIMON delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Hyman concurred   in the judgment and opinion.

**OPINION**

¶ 1     After a bench trial, defendant was found guilty of theft and other financial crimes for

allegedly buying merchandise he was led to believe was stolen and then selling it online.   He

appeals his convictions.   We reverse.

¶ 2                                BACKGROUND

¶ 3     Griffen Glynn, a senior investigator at Target, had information that an eBay user,

Rick777888, was selling stolen merchandise from Target.   Glynn collaborated with the Cook

County Sheriff's Police to conduct a fencing operation.   On September 12, 2012, in furtherance of

that operation, Glynn gave a police department investigator, Raymond Struck, 8 DVDs from

Target to sell to the suspected fence.

¶ 4    Another police department investigator, Lisette Rivera, was assigned to work undercover to sell the goods to the suspect.   On the same day Struck received the DVDs from Target, Rivera went to a home in Cicero, Illinois to sell the goods to "Rick," who turned out to be defendant, Visai Netisingha.   Defendant took the DVDs inside and returned with money to pay Rivera.   The investigators did another controlled sale of 8 DVDs the next day with the same result.   This time, they wrote "913" (to signify September 13th) on the DVDs in a marker only visible under a particular light.   Four days later, Rivera obtained authorization from the Circuit Court of Cook County to wear a camera to conduct further sales.   On September 20, 2012, the investigators did another sale, this time for teeth whitening strips and razor blade cartridges.   The investigators conducted two additional sales on September 27th and October 1st that were substantially the same as the others, the value of the property was increased in each successive sale.   Target used a covert eBay account under the name Courtney Coglund to purchase two of the DVDs from the account of Rick777888.   The DVDs were delivered to a Minnesota address that Target listed for Coglund and contained the "913" notation, confirming that they were the same ones that the police sold to defendant.

¶ 5    After the October 1st sale, the police arrested defendant.   Investigator Struck testified that he spoke to defendant after the arrest and defendant told him that he had been selling merchandise for six years.   Defendant said that he used to run a hot dog stand near a pawn shop and he would periodically buy things from the people coming and going from the pawn shop.   At some point, the hot dog stand closed and the people looking to sell merchandise started coming to defendant's house directly.   Defendant would buy merchandise and then list it on eBay.   Struck testified that

he asked defendant whether defendant knew the merchandise was stolen. Defendant supposedly said that he believed it probably was stolen, but he did not really ask any questions about it.

¶ 6     During the sales, Rivera dropped hints that the items were stolen. She said things to the effect of "there was a salesperson in the aisle so I couldn't take those" and "I think I'm going to stop taking shit from Target, I'm going to WalMart for a while." Defendant never acknowledged her claims. Defendant never asked if anything was stolen nor did he ever tell Rivera to steal anything. Indeed, none of the property was actually stolen. Following a bench trial, defendant was found guilty of operating a continuing financial crime enterprise, selling stolen property online, and four counts of theft. He appeals those convictions.

ANALYSIS

¶ 7     Defendant was charged under subsection (a)(4) of the theft statute. That subsection says that a person commits theft when he obtains control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce him or her to believe that the property was stolen. 720 ILCS 5/16-1(a)(4) (West 2012). Defendant argues that he cannot be guilty of that offense because there is no stolen property. The State, however, claims that defendant's proffered interpretation is incorrect because a person can be guilty as long as the property is obtained "under such circumstances as would reasonably induce him or her to believe that the property was stolen." Defendant's interpretation is correct.

¶ 8     Theft, under subsection (a)(4), is a two element crime. It provides that it is a crime to (1) knowingly obtain control over stolen property; (2) knowing the property to have been stolen or under such circumstances as would reasonably induce him or her to believe that the property was stolen. 720 ILCS 5/16-1(a)(4) (West 2012). Here, the property obtained by defendant was not

stolen.    A necessary element of the offense is absent.

¶ 9      The State maintains that it is enough that defendant *thought* the property was stolen.    It is not.    The crime set forth in this particular subsection is wholly predicated on the existence of stolen property.    No reasonable interpretation of this subsection could lead one to conclude that *thinking* property received is stolen constitutes a crime.    Is the mistaken belief that the property is stolen also a crime?

¶ 10     The State relies on an Illinois Supreme Court case that it claims confirms its interpretation. In reality, the case exposes the error infecting its argument.    The Court plainly states that stolen property is required on both sides of the disjunctive.

> "Section 16-1(a)(4) sets out two distinct sets of circumstances,
> separated by the disjunctive 'or,' establishing the offense of theft. In
> the first instance, the offense is committed when one knowingly
> '[o]btains control over stolen property knowing the property to have
> been stolen.' In the second instance, the offense is committed when
> one knowingly obtains control over stolen property 'under such
> circumstances as would reasonably induce' belief that the property
> was stolen (emphasis omitted)."    *People v. Price*, 221 Ill. 2d 182,
> 189-90 (2006).

Both provisions are predicated on the existence of the property being stolen.

¶ 11     The State also argues that defendant's proffered interpretation could not be correct because such an interpretation "would make it impossible to prove anyone guilty of theft based on a controlled sale ***."    But that is also wrong.    There is another subsection of the theft statute that

criminalizes the conduct of a party to a controlled sale.   Under that subsection, a person commits theft when he knowingly obtains property in the custody of any law enforcement agency which a law enforcement officer explicitly represents to the person as being stolen or represents to the person such circumstances as would reasonably induce the person to believe that the property was stolen.   720 ILCS 5/16-1(a)(5) (West 2012).   While the State argues that defendant's interpretation would render the word "or" superfluous in subsection (a)(4), the State's interpretation would render all of subsection (a)(5) superfluous.   There would be absolutely no need for subsection (a)(5) if the State's interpretation of (a)(4) was correct.   Accordingly, defendant cannot be guilty of theft in the manner in which it was charged and prosecuted at trial.

¶ 12     Defendant argues that the State's decision to charge him under subsection (a)(4) is more than a mere technical defect in the charge so reversal is warranted.   The State does not respond to this argument.   Ordinarily, a reference in a charging instrument to an incorrect chapter or section of a statute, or both, is regarded as a formal rather than substantive defect.   *People v. Boyd*, 87 Ill. App. 3d 978, 981-82 (1980).   And a formal defect generally does not warrant reversal of a conviction unless the defendant was prejudiced by the error.   *Id*.   Defendant claims that he would suffer prejudice if we upheld his conviction because he prepared his defense based upon the actual charges and because his procedural due process rights would be violated if the charges were changed at this stage.   For example, when moving for a directed finding, defendant argued that he could not be guilty of theft because the items were willingly given to investigators and not stolen. The trial court denied the motion.   But defendant was correct that the State had failed to present evidence of an element of the charged crime and the motion for a directed finding should have been granted.   As the State does not challenge defendant's argument, and as it still continues to

insist that defendant was actually guilty under subsection (a)(4), we agree that defendant's theft convictions should be vacated for failure to prove an element of the charged crime.

¶ 13    Because defendant's convictions for theft are vacated, his conviction for operating a continuing financial crime enterprise, which is based on the existence of the theft convictions, must also be vacated.   In any event, the State concedes that the continuing financial crime enterprise conviction should be reversed because the conviction violates the constitutional prohibition of *ex post facto* laws.

¶ 14    Defendant also argues that his conviction for the online sale of stolen property must be reversed.   A person commits the crime of the online sale of stolen property when he uses or accesses the internet with the intent of selling property gained through unlawful means.   720 ILCS 5/16-40(a) (West 2012).   Again, the State did not prove that the property was gained by unlawful means.   The property was transferred voluntarily.   The crime is called "online sale of *stolen property*."

¶ 15    The State relies on subsection (a)(4) of the theft statute as the predicate for defendant's unlawful obtainment of the property.   There was no finding that defendant obtained the property unlawfully in the broad sense that the State now advocates.   Instead, the trial court found that defendant was guilty of the online sale of stolen property because he went on eBay "for the purpose of selling items through an unlawful means knowing these items had been stolen or [having] should have known these items were stolen."   There was no evidence to support that finding.   The court presupposed that the property was stolen.   Neither the State nor the trial court addressed defendant's initial obtainment of the items as illegal under this count and, like with the theft counts, brushed over that element in favor of finding that defendant knew or should have

known the property was stolen.   But it was not.   In addition, the sentencing provision for the online sale of stolen property requires proof of the retail value of the "stolen property or property obtained by deception."   720 ILCS 5/16-40(d) (West 2012).   The State cannot prove either one of those propositions in this case.

¶ 16    Unlike the theft statute which makes it a crime to obtain property from law enforcement when it is actually or apparently stolen (720 ILCS 5/16-1(a)(5) (West 2012)), this statute has no such provision.   There is no language that criminalizes selling apparently stolen property, which is the basis on which the State attempts to hold defendant criminally liable.   The General Assembly could have included such a provision for internet offenses, but it did not.   The trial court's findings were based on the language of subsection (a)(4), that defendant received property under circumstances in which would reasonably induce him to believe that the property was stolen. But that, in and of itself, is not sufficient to support a conviction for the online sale of stolen property when no stolen property exists.

¶ 17                                     CONCLUSION

¶ 18    Accordingly, the trial court's judgment is reversed.   Defendant's convictions are vacated as are any orders assessing fees against him in association with his convictions.

¶ 19    Reversed.